IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CRYSTAL DAWN WEIMER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 20-1850 |
| ) | |
| KILOLO KIJAKAZI, ) | |
| *Acting Commissioner of Social Security*, ) | |
| ) | |
| Defendant. ) | |

O R D E R

AND NOW, this 8th day of August, 2022, upon consideration of the parties' cross-motions for summary judgment, the Court, upon review of the Commissioner of Social Security's final decision denying Plaintiff's claim for supplemental security income benefits under Subchapter XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.*, finds that the Commissioner's findings are supported by substantial evidence and, accordingly, affirms. *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153-54 (2019); *Jesurum v. Secretary of U.S. Dep't of Health & Human Servs*, 48 F.3d 114, 117 (3d Cir. 1995) (citing *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988)). *See also Berry v. Sullivan*, 738 F. Supp. 942, 944 (W.D. Pa. 1990) (if supported by substantial evidence, the Commissioner's decision must be affirmed, as a federal court may neither reweigh the evidence, nor reverse, merely because it

would have decided the claim differently) (*citing Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981)).[1]

---

[1]  Plaintiff raises a number of arguments asserting that the Administrative Law Judge ("ALJ") erred in finding her not to be disabled under the Social Security Act. However, these arguments are largely based on Plaintiff's misinterpretation of the ALJ's decision, and the Court finds no merit in her position.

Much of the confusion has to do with the findings of Lindsey A. Groves, Psy.D., a one-time consulting source to whom counsel often refers his clients. Pursuant to testing utilizing the Wechsler Adult Intelligence Scale (4th Edition) performed on September 24, 2019, Dr. Groves reported Plaintiff's scores as 61 in verbal comprehension, 65 in perceptual reasoning, 58 in working memory, 53 in processing speed, and 53 as to her full-scale IQ. (R. 495). Plaintiff alleges that the ALJ "attempted to refute" these scores in finding that she did not meeting Listing 12.05B, 20 C.F.R. Part 404, Subpart P, Appendix 1, at Step Three of the sequential analysis. However, the ALJ did not question the accuracy of Plaintiff's intellectual testing results; rather, he accepted those results and did not dismiss the diagnoses arising therefrom. (R. 19). Listing 12.05B has three general requirements, the first being significantly subaverage general intellectual functioning, generally evidenced by certain IQ scores of 70 or below. *See* 12.05B.1. The ALJ did not question whether Plaintiff could meet this criterion; he went on, however, to find that, regardless, Plaintiff could not satisfy the remaining criteria set forth at 12.05B.2 and 3. It is important to remember that to meet a listing, a claimant must "present medical findings equal in severity to *all* the criteria of a listed impairment." *Degenaro-Huber v. Comm'r of Soc. Sec.*, 533 Fed. Appx. 73, 75 (3d Cir. 2013) (quoting *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990) (emphasis in the original)).

Plaintiff, of course, also contends that the ALJ erred in finding Dr. Groves' opinion to be not persuasive in regard to his findings relating to the remaining 12.05B criteria – specifically that Plaintiff did not exhibit significant deficits in adaptive functioning and that her disorder did not begin prior to her turning 22. However, again, the ALJ did not, in finding Dr. Groves' opinion to be unpersuasive, reject her clinical findings or her diagnosis that Plaintiff had a mild intellectual disability and impairments in visual-spatial functioning. Rather, he considered these findings in light of the entire record in disregarding Dr. Groves' opinion that Plaintiff would be off-task 95 per cent of the time and need redirection by supervisors or coworkers 95 per cent of the time. (R. 26, 500). Dr. Groves' diagnosis, in and of itself, "does not reveal the degree of functional limitation resulting from the claimant's mental impairment." *Maddaloni v. Comm'r of Soc. Sec.*, 340 Fed. Appx. 800, 802 (3d Cir. 2009). It was therefore appropriate for the ALJ to look beyond Plaintiff's diagnosed intellectual disability and visual-spatial issues to determine whether Plaintiff met all the criteria for Listing 12.05B. He provided detailed and extensive reasons for so finding, and the Court finds that those findings are supported by substantial evidence.

It is not entirely clear whether Plaintiff is arguing that the ALJ also erred in finding that she failed to meet the criteria for Listing 12.05A. She does, though, emphasize that her

capability of participating in standardized intelligence testing is not inconsistent with the requirement in Listing 12.05A that she demonstrate significantly subaverage general intellectual functioning. However, Part A of Listing 12.05 sets forth one way of establishing significantly subaverage general intellectual functioning which expressly requires, *inter alia*, the inability to function at a level required to participate in standardized testing of intellectual functioning. The record clearly supports the ALJ's finding that this was not the case here. It also supports his finding that, in any event, Plaintiff failed to satisfy the remaining two criteria pursuant to Listing 12.05A.

Plaintiff also challenges several aspects of the ALJ's formulation of her residual functional capacity ("RFC") and the hypothetical question to the vocational expert ("VE"). She first argues that, in making these determinations, the ALJ omitted Dr. Groves' findings of severely impaired visual-spatial skills. However, as discussed above, the ALJ did acknowledge that diagnosis and considered it in making his findings. In any event, the issue is not whether Plaintiff had been diagnosed with a specific condition, but what functional limitations the condition caused, and Plaintiff does not suggest what additional functional limitations should have been included. *See Walker v. Barnhart*, 172 Fed. Appx. 423, 426 (3d Cir. 2006). She further argues that the ALJ's finding at Step Three that she had moderate limitation in her ability to concentrate, persist, and maintain pace necessarily required that her RFC should include a restriction that she will be off-task 20-30 per cent of the workday. However, the cases on which she relies state no such rule. Indeed, in *Ramirez v. Barnhart*, 372 F.3d 546 (3d Cir. 2004), one of the cases to which she cites, the Third Circuit Court of Appeals held only that the ALJ had failed to adequately account for the claimant's moderate limitation in regard to concentration, persistence, and pace by limiting the claimant to simple, repetitive one or two-step tasks in the RFC. Here, the mental limitations found by the ALJ in the RFC were far more extensive and specific. The Court further notes that, similarly, the ALJ adequately accounted for Plaintiff's marked limitation in interacting with others by limiting her to no work-related interaction with the public, only occasional and superficial interaction with co-workers, and only occasional supervision. There is no inherent inconsistency between these findings, and the ALJ explained his rationale at significant length.

Plaintiff further argues the ALJ erred by not addressing the apparent conflict between the VE's testimony and the Dictionary of Occupational Titles ("DOT"). Specifically, she points to the VE's testimony that the jobs Plaintiff could perform at step five – housekeeper, marker, and router clerk – all have a Specific Vocational Preparation ("SVP") category of 2, which she claims is inconsistent with "DOT level 2 reasoning" which requires "commonsense understanding to carry out detailed but uninvolved written or oral instruction in problems involving a few concrete variables in standardized situations." (Doc. No. 16, pp. 15-16). However, this argument incorrectly attempts to conflate the SVP category for a job with its General Educational Development (GED) reasoning category. An SVP is "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." Appx. C, Dictionary of Occupational Titles ("DOT"). SVP levels 1 and 2 are defined as anything beyond short demonstration up to and including 1 month. *See id.* What Plaintiff appears to be referring to is GED reasoning levels, one of the three divisions of the general educational development.

3

Therefore, IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment (Doc. No. 15) is DENIED and that Defendant's Motion for Summary Judgment (Doc. No. 17) is GRANTED as stated herein.

s/Alan N. Bloch
United States District Judge

ecf:  Counsel of record

---

*See id.* "Reasoning levels in the Dictionary of Occupational Titles range from level 1 to level 6" with level 1 being the lowest reasoning level and level 6 requiring the most reasoning. *Zirnsak v. Colvin*, 777 F.3d 607, 616 (3d Cir. 2014). Reasoning level 1 involves applying commonsense understanding to carry out simple one- or two-step instructions in standardized situations with occasional or no variables on the job. *See* Appx. C, DOT. Reasoning level 2 involves applying commonsense understanding to carry out detailed but uninvolved written or oral instruction in problems involving a few concrete variables in standardized situations. *See id*. Although Plaintiff incorrectly states that all of the jobs identified by the VE have a reasoning level of 2, one of them – housekeeper – actually has a reasoning level of 1.

Regardless, contrary to Plaintiff's assertion otherwise, the Third Circuit has held that a reasoning level of 2 does not contradict a restriction to simple, routine, and repetitive tasks and declined to hold a *per se* conflict between such a reasoning level and simple and repetitive tasks involving routine work. *See Money v. Barnhart*, 91 Fed. Appx. 210, 215 (3d Cir. 2004). In fact, "there is no bright-line rule stating whether there is a *per se* conflict between a job that requires *level 3* reasoning and a finding that a claimant should be limited to simple and routine work." *Zirnsak*, 777 F.3d at 618 (emphasis added). Thus, the Court finds no merit to Plaintiff's final argument. In any event, Plaintiff has made no real argument that she could not perform the jobs at issue, and, as discussed herein, the ALJ discussed the medical evidence and its impact on Plaintiff's functional limitations at great length. Moreover, Plaintiff did not raise any inconsistencies at the hearing. Finally, the jobs found by the ALJ were offered as "representative occupations." (R. 28, 59).

The Court emphasizes that, if supported by substantial evidence, the Commissioner's decision must be affirmed, as a federal court may neither reweigh the evidence, nor reverse, merely because it would have decided the claim differently. *See Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (citing 42 U.S.C. § 405(g)); *Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986); *Berry*, 738 F. Supp. at 944 (*citing Cotter*, 642 F.2d at 705). The ALJ adequately addressed the record evidence in finding that Plaintiff was not disabled. The Court will not disturb this finding.

Accordingly, for all of the reasons set forth herein, the Court finds that the ALJ employed the proper legal standards and that substantial evidence supports his decision. The Court therefore affirms.